Good morning to you Mr. Linetti and welcome to the court. You can assume that we've studied the briefs and the drawings that were to guide the roof repairs at Norfolk Navy Base so give us the core of your argument and don't spend a lot of time on the facts and the procedural history. We probably have that pretty well under control. All right may it please the court my name is David Linetti and I represent the Appellant States Roofing Corporation. Fundamentally this appeal centers around what constitutes a reasonable interpretation of government contract documents, an issue that this court reviews de novo. Again I don't want to belabor what's in the briefs but basically there's four reasons that we believe that the Armed Services Board of Contract Appeals got it wrong. Primarily the board erred in ruling that SRC's interpretation of the parapet wall waterproofing requirements was not reasonable. I'd like to spend the majority of my time on that argument unless you have questions regarding the other arguments. How do you explain the drawing A38 detail 1 as being consistent with paint as opposed to membranes held down by cleats against the wall of the parapet of the penthouse? Well we believe SRC's interpretation is the only reasonable interpretation that makes full use of drawing A38. Drawing A38 with respect to the issue you're describing talks about a three-layer membrane. That same drawing as well as yes but the the drawing also shows cleats and fasteners to hold the membrane against the vertical wall of the parapet and that seems inconsistent with paint because paint isn't held in place by cleats and fasteners it just sticks to the surface it's applied to. So I'm having trouble understanding how any reasonable roofer looking at that detail 1 of A38 and looking at the cleats and fasteners to hold the membrane onto the wall would conclude that paint would suffice. Well we disagree that it's actually holding those layer those membranes on your honor. There are fasteners indicated on A38. They have specific purposes as we point out in our reply brief. There's fasteners a horizontal row of fasteners at the top of the parapet wall on both sides to attach that sheet metal coping at the top of the parapet wall. There's also a horizontal row of fasteners down at the bottom that secures the base flashing that comes up. It's a flat roof and that base flashing has to come up to cover the corner and then it needs to terminate at some point. SRC's interpretation of the drawings was that that that base flashing would be fastened to the wall via the fasteners and then Newark note 28 on sheet A38 is significant your honor because it calls out a reglet. There the purpose of a reglet is to terminate the base flashing so that you can then have a distinct barrier. Is that inconsistent with your idea that the cleats and fasteners are just to hold the flashing? No your honor the the base flashing initially would be held by those fasteners then there would be another small section of three-ply membrane that would come up lap over that base flashing and terminate in a reglet. Under the Navy's interpretation Newark note 28 has absolutely no meaning. It talks about creating a reglet in the existing concrete. The only existing concrete is the parapet wall and then it talks about aligning that reglet with the existing reglet in the brick. The brick is the penthouses. In certain sections of the roof the penthouses butt up against the parapet wall and it forms a corner where you have the brick penthouse and then the concrete parapet wall. Newark note 28 talks about saw cutting a new reglet in the existing concrete wall the parapet wall and aligning it with the existing reglet in the brick. I think we might be getting confused about what I understand to be two different parapets. As I understand it the low the roof level itself has some parapets and in certain locations portions of the roof have penthouses and that the penthouses also have parapets. But those are different parapets than the parapets at the basic roof level. Is that not correct? That is correct. I refer to them as main roof parapets which are the perimeter of the main roof and then the penthouses themselves have individual roofs on top that have penthouse parapet walls. And I thought that the dispute in this case had to do exclusively with the parapet walls of the penthouses. No your honor that's not correct. The board found that SRC's interpretation that painting was required was accurate regarding the penthouse parapets on roof cells A and B. But A and B are not in dispute. It's C to K that are in dispute. Actually C through J your honor and it is the main roofs and the parapet I'm sorry the main roofs and the penthouse parapet walls that are in dispute your honor. SRC's interpretation was that all of those parapet walls require painting per the contract. The Navy's interpretation is that they required a three ply or roofing membrane. Again the Navy's interpretation completely ignores several drawing notes as well. On sheet A8 it calls out typical notes in elevations four and five and those typical notes specifically point to main roof parapets. It's undisputed that the main roof that is being pointed at in sheet A8 has to mean the main roof on cells C through J. That's why it's a typical note. Also if you look at the demolition note 23 which is called out on that main roof parapet back on sheet A2 where the definitions are it specifically says typical for all parapet walls. We believe SRC's interpretation is the only interpretation that properly reconciles the specifications, the drawings, and the drawing notes. The specifications show up at page 187 of the joint appendix and there it specifically calls out three layers for the coating system that applies to these parapet walls. It's got a primer, an intermediate layer, and a top coat layer. And what's significant there is the thickness of that coating. How do you equate a call for membranes with painting? I would have thought that membranes are pre-formed films made of some material, apparently felt in this art, that's waterproof. And membranes seem inconsistent with layers of paint. Your Honor, our position is that a painting system can be a waterproofing membrane. And here it specifically calls out three layers. It can certainly be waterproofing if the paint has that property, but it's not so clear to me that it's reasonable to say well if I paint a wall I've now put a membrane on the wall. I would suggest that's a much more reasonable interpretation than applying specific different meanings to the word layer and ply as the Navy does. On the same drawings, on sheet A38 and A40, the term ply and layer are both used. And the Navy admits in its brief that it applies identical meanings to these different terms on page 11 of the government's brief at footnote 3. And this board has, the boards of contract appeals have previously held that it's illogical to infer identical meanings to different words when used in a contract. It's hard to make a generalization that fits all cases as to whether slightly different similar words have distinctly different meanings to the same meaning. It seems to vary from one contract or one case to another. Well, we would argue that two different terms should have two different meanings. We cite the HCC case, for instance, where the term primer was held to be distinct from the term undercoat. One might think logically they're referring to the same thing. The board held no. They're different terms for different reasons. Similarly, to use two different terms on the same contract drawing, it would be illogical to infer identical meanings to them. We believe that SRC's interpretation is the only one that properly reconciles the specifications, which I mentioned talks about three layers of paint. I also want to point out that in that table three specification, it notes that it's a 20 mil painting system. That's a very thick painting system. If you look at the table beneath it, it talks about coats of paint on the order of 1.5 mils thick. My point is that it might take more than three coats of paint to come up with the three-layer paint system indicated on page 187 of the joint appendix. Mr. Meddy, what about the point of the argument that this contract is ambiguous and you didn't object to the Navy's interpretation earlier? Again, we do not believe it is ambiguous. Are you referring to the use of the different terms? Your Honor, we're certainly having a lot of discussion about what it means. It sounds ambiguous to me. Well, we would argue that if it is ambiguous, it's a Layton ambiguity and not a Payton ambiguity. As this court has previously held, a Payton ambiguity is something that has a glaring contradiction, a direct numerical conflict, for instance, or an obvious internal inconsistency. As a matter of fact, I think the Chief Judge participated in the R.J. Crowley decision and the Precipice Construction decision that we cite in our brief for the fact that a Payton ambiguity is something that does have a glaring contradiction. We do not believe that there was any such glaring contradiction and that SRC's interpretation properly reconciled the specifications, the contract drawings, and the contract notes. Again, the Navy's interpretation requires you to ignore certain contract notes. Can you explain that a little further? It was unclear to me what notes you think have no meaning because of the interpretation by the contract board. On Sheet A8, Your Honor, there are specific notes relating to a main roof. The Navy's position is that Sheet A8 only relates to cells A and B. There's no doubt that it's pointing to the main roof. If it only applied to A and B, it wouldn't make any sense because A and B, main roof, are not part of this contract as the board found on page 2 of its opinion. So the Navy's interpretation relies on you ignoring the notes on Elevations 4 and 5 at the lower left-hand corner on Sheet A8. The Navy's interpretation also requires you to ignore on Sheet A38 Newark Note 28 that talks about creating that reglet in the existing concrete parapet wall. The SRC's interpretation, on the other hand, properly reconciles the specifications, the drawings, and the drawing notes. And for this reason, we... Well, how so? Again, I'm not so... You state the conclusion, but I'm not clear how you get there. We get there because, Your Honor, we view that a layer, as indicated in drawing A38 and A40, is talking about a paint system. It may require more than one coat to come up with that individual layer as pointed out in the specifications, but the three layers are talking about three layers of paint. It's not talking about a three-ply layer. If it was, it would have used the word ply. So, SRC's interpretation is reconciling the notes on Sheet A8 calling for painting with the notes on A38 talking about a layer, which SRC reasonably interpreted to be a layer of paint, Your Honor. For this reason, we ask that you would reverse the decision of the Armed Services Board of Contract Appeals and find in favor of State's Roofing Corporation. And I'd like to reserve the remainder of my time. All right, thank you. Ms. Dempsey, good morning. Good morning. I'm confused. Can you help us out? Yes, Your Honor. The key drawing... Well, first of all, the contract drawings and specifications clearly require that State's Roofing should have installed a three-ply flashing system as opposed to paint on the parapet walls. And we're talking about two different parapet walls. We're talking about the main parapet walls and then the penthouse parapet walls on roof cells C through J. And State's roofing... Well, the key drawing, as Your Honor recognized, is drawing A38. And in drawing A38, you'll see that there's three layers, three heavy lines going up the parapet wall. And as Your Honor also recognized, it's attached vertically to the wall with fasteners. And this three-layer membrane goes over the parapet wall and is tucked under the parapet wall. And the plaintiff's or appellant's counsel indicates that the fasteners were used to attach the sheet metal coping on the top of the wall. However, the sheet metal coping on the top of the wall would also be unnecessary if the walls were to be painted. So, therefore, State's Roofing's interpretation that these parapet walls were to be painted renders the need for fasteners pursuant to New Work Note 17, as well as the sheet metal coping on the top of the wall pursuant to New Work Note 4, completely obsolete. Moreover, the New Work Note... I don't understand what you mean, obsolete. It wouldn't be necessary if the walls were to be painted. The sheet metal coping on the top of the wall, which sutures the three-layer membrane or flashing system to the wall. The sheet metal... Do you mean obsolete or redundant?  Furthermore, appellant's counsel also refers to New Work Note 28 as indicating, I guess, the work for the reglet and counter flashing. However, New Work Note 28 points to dotted lines, which refer to actually the penthouse side wall that is next to the main parapet wall. And this is shown on Joint Appendix 383, which is a picture of... You'll see that it portrays a picture of the main parapet wall and then the side of the penthouse wall. New Work Note 28 actually refers to the reglets on the side of the penthouse wall. And, Your Honors... Is it your argument that all this contract with the reglets and the parapets is not ambiguous, is clear? It's absolutely clear, Your Honor. The reglets and counter flashing... Your position... You've never taken the position that it was explicitly stated that this was required. Isn't the Navy's position that when you dig through all of this, more likely than not the three layers are required, not of paint but of flashing? Yes, Your Honor. The contract drawings... But you haven't ever stated that it was explicitly stated in the contract, as I recall. And it seems to me that what's controlling here is whether there was sufficient ambiguity that when the contractor was instructed, this is how it should be done. And I think it's not disputed that the proposal was based on paint because there was paint on A and B, that it was not unreasonable for the proposal to be based on paint. Is it the only question whether the additional work that was done should be compensated? I'm sorry, I didn't hear your last portion of your sentence. But isn't the issue whether... If it was not unreasonable to read it as the contractor read it, whether or not we can, in retrospect, dig through and say you take this and this and this and you can read it the way the Navy read it. There's no question but that the original bid was based on paint. And there's no question but that it was done as the Navy instructed. And the only issue before us is whether that extra work should be compensated. Correct, Your Honor. However, appellant's interpretation of the contract would cause an unreasonable reading of the drawings as a whole. It would render certain provisions of the contract completely unnecessary and it also creates a surplusage of provisions. It doesn't give reasonable meaning to several new work notes that would be unnecessary if the walls... That sounds like the argument he made, which is right. The government's position is that state's roofing should have installed a three-ply flashing system, not paint the walls. And if I could refer your honors to drawing A8... Wait a minute. You made a whole series of generalizations about all sorts of things that would be redundant or given no effect or conflicting, et cetera, if one adopts the contractor's interpretation. But you just made generalizations. You didn't show us any such conflicts or redundancies. I can guide your honors through the redundancies. The redundancies are new work notes 17, which are the fasteners on the parapet walls. The redundancy would also be the sheet metal coping on the top of the wall. Wait a minute. Not so fast. What's redundant? Unnecessary if the walls were painted. What's redundant about what you just said? I don't understand why it's redundant. What I meant, your honor, was that these new work notes, if we were to take appellant's interpretation, would be entirely unnecessary. How so? Because fasteners and sheet metal coping is not necessary for walls that are painted. The fasteners and the sheet metal coping is only necessary if a waterproofing membrane that needs to be attached to the walls are placed on the walls, as opposed to painting the walls. That's not self-evident to me. Why coping is not necessary for a wall that's painted but is for a wall that's membraned is certainly not apparent to me. Well, your honor. Copings to protect the horizontal surface at the top of a wall from effects of weather seem to be useful whether the wall is painted or whether it's clad with a membrane. Right, your honor. You're saying you wouldn't use coping if the wall were painted. Coping is typically used, in addition to fasteners, is used to suture a membrane in place. Additionally, if the walls were to be painted, the counter flashing or reglet would have been necessary at the termination of the base flashing, so that the base flashing wouldn't peel away from the wall and would cause leakage into the building. However, drawing A38 does not provide for this counter flashing or reglet at the termination of the base flashing. State's roofing points to New Work Note 28, which is a couple inches above the termination of the base flashing and points to dotted lines. These dotted lines represent the side of the penthouse wall, which your honors can refer to in Joint Appendix 383. There's a picture of the side of the penthouse wall. Additionally, the New Work Note 28, which points to the dotted lines. Are penthouse walls an issue here or only parapets? Only the penthouse parapet walls and the main parapet walls are an issue in this case. However, New Work Note 28 needs to be read in order to understand the drawings as a whole, because State's roofing contends that New Work Note 28 provides for this counter flashing that would have been necessary if the walls were painted. In addition to Joint Appendix 383, if you turn to the prior drawing, drawing A37, drawing A37 specifically refers to the side of the penthouse wall, which gives in detail what is necessary in providing counter flashing and a reglet. I thought you just agreed that we don't have any walls an issue here. We only have parapets of two types an issue here. Right, your honor, but State's roofing contends that New Work Note 28 on drawing A38 provides for the counter flashing that would have been necessary if the walls were painted. So I'm trying to explain what New Work Note 28 is actually referring to. And New Work Note 28, which points to dotted lines, the same language is used in New Work Note 24 on drawing A37, which refers to the side of the main penthouse walls. Additionally, in further discussing the... That seems to involve the same confusion. We're only interested in parapets, not walls. And so drawings that refer to walls don't seem to have any relevance to this case because the case is only about parapet. That's correct, your honor, but I'm trying to explain what New Work Note 28 is referring to since State's roofing has put that, has argued that that is, that's the provision for the counter flashing. The government's position is that there is no counter flashing indicated on drawing A38 for the parapet walls. I think that you're helping us to recognize the ambiguities in all of this. We need to explain why the contractor's reading of this contract was not reasonable, unacceptable, and needs to be rejected so that the additional cost is borne entirely by the contractor. When it comes down... There are these aspects of misinterpretation or potential conflict. That isn't enough, is it? To say that it could be read the way the Navy reads it, and it could be read the way the contractor read it, and the contractor then followed the Navy's instructions, having bid on his reading, and then told, no, we've got it right. So isn't that the fundamental question before us? Well, if this court does... If this court finds that both parties' interpretations are reasonable and could be read by, or construed in the drawings, which the government, the State's roofing's interpretation... Taking the situation as a whole, including the walkthrough, including the fact that there was paint on A and B, which are not now at issue, and everything else, we still need to understand that the contractor's reading was unreasonable. The State's roofing's interpretation is unreasonable. It's unreasonable, as I have tried to explain, because it renders certain new work notes unnecessary. It also, and I wanted to get to this, it renders, it provides a conflict of surplusage of the provisions, because in drawing A8, there's a specific painting specification that is used for the penthouse, parapet walls, and roof cells A and B, which the parties don't dispute. Both the parties agree that the cells on A and B should have been painted. And you'll see on A8, there is a specific painting specification, new work note 61. New work note 61 specifically states, backside of parapet wall, paint down to surface. Apply counter flashing color number one. This painting specification is not cross-referenced in the drawings for the main roof cells for C through J, or the penthouse parapet walls for C. Ms. Dempsey, if this contract is ambiguous, and the contractor didn't object, and if it's patently ambiguous, then reasonableness doesn't come into it, does it? Right, Your Honor. If it was patently, which we argue, if this court finds that both parties' interpretations are reasonable. Some days we say patent, and some days we say paper. Paper. Sometimes the same thing. The same day. Well. Sorry to have interrupted you. That's all right, Your Honor. States roofing did not inquire into this ambiguity. And the ambiguity created by the three terms, plies, layers, and coats, created facial inconsistencies that were glaring and substantial for specifically the contract specifications. In other words, that's your case? Yes, Your Honor. Patent, ambiguity, failure to object. Yes, Your Honor. Period. Let me ask you one final thing. As I understand it, it's essentially admitted by the government that the government made a bad mistake here, in that the specification was supposed to describe the requirements for the waterproof membranes that the government wanted on these parapet inner walls. But through some foul-up in the preparation of the contract documents, the specification entirely omitted what those membranes needed to look like and what kind of materials they needed to be made out of and how thick they needed to be made and so forth. And so I'm wondering whether in light of the failure to have a specification covering the membranes, that doesn't add to the reasonableness of the interpretation of the contractor that paint would meet the requirements of the contract. Regardless of whether the specification was omitted or not, which we do admit was omitted, States Roofing's interpretation of the contract still, in reading the contract drawings as a whole and giving meaning to all of its provisions and avoiding surplusage of its provisions, its interpretation would be completely unreasonable. It still needs to... You're saying the contractor was supposed to, said that when the contract said layers, you really probably meant plies, and therefore there was duty to say, did you really mean plies instead of layers? No, Your Honor. It certainly didn't mean painting the walls because painting the walls didn't make sense in reading the drawings as a whole. So at a minimum... A and B were painted. I'm sorry, Your Honor? A and B were painted. A and B were painted pursuant to a different prior contract. Okay, but they were painted. So when this contractor walks through and sees that A and B are painted and then gets to bid on C through J, isn't that information that any reasonable person, when the contract is otherwise silent, could reasonably think that that applies rather than that something different is in the back of some government employee's head who just neglected to say so? Well, it doesn't obviate the contractor's need to review the contract drawings and... And fix the government's mistake. The government omitted... Or pay the consequences. No, Your Honor. State's roofing's interpretation does not make sense. It's not reasonable. And so even if A and B were painted pursuant to a prior contract, that has nothing to do with the roof cells at issue. Sure, they saw what was done on A and B, but this contract specifically referred to roof cells C through J. They needed to do their due diligence, review the contract drawings and specifications, and interpret them so that they make sense, which it didn't do. All right, well, thank you. I think we've got your position, Mr. Linetti. You have a couple of minutes for rebuttal. Yes, Your Honor, I just want to add on. The ambiguity, as pointed out by Judge Newman and the Chief Judge, not only were A and B painted recently, the existing conditions of roof cells C through J were painted. State's roofing had done over 900 government roofing projects in the past and knew how to read drawings. Additionally, the specification was omitted, as the court pointed out. The board specifically found that waterproofing parapet walls is reasonable, and in fact State's roofing has previously used paint as a waterproofing product on parapet walls in the past. I'd also like to address a comment regarding the sheet metal coping. As the Chief Judge pointed out, you very well could have sheet metal coping on walls that are painted. The sheet metal coping provided a slant for the water to run off, so you didn't have a horizontal surface. You didn't have water laying there that would freeze and crack and create long-term maintenance issues. So we do not find it inconsistent to require sheet metal coping on parapet walls that were required to be painted. The dotted lines that were referred to on sheet 838, Newark Note 28, are showing the brick of the parapet wall, showing the existing reglet. And the note is telling you to create a new reglet in the existing concrete wall, which is the parapet wall, and to align that reglet with the one that exists on the brick. So there's nothing inconsistent or surplusage about Newark Note 28 on sheet 838. I also wanted to point out that this court has previously found that layer can be used in the context of painting. There's a case that I don't think we cited in our brief, R.B. Wright Construction Company, 919 F. 2nd 1569. And that case dealt with specifications that were specifically talking about coats of paint. And in the dissent, in pointing out a hypothetical, the judge mentioned that it wouldn't make sense to put a layer of latex paint on top of a layer of acrylic paint. So the context of referring to paint as layers is not foreign. And SRC's interpretation was a coat of paint is an individual application of a paint. However, this specification, especially in light of the fact that it required a 20-mil thick system, which is extremely thick, very well could have required more than one coat of paint to come up with an individual layer. There are three layers specified in the specification, and we believe it was reasonable to interpret the different use of layer than ply, especially when on the same contract drawing, as having different meanings. Although SRC agrees with the board that the contract documents may not be crystal clear, SRC's interpretation of the parapet wall waterproofing requirement is reasonable. And to the extent that this court does find that there are any ambiguities, they certainly don't qualify as glaring contradictions, as this court has pointed out, is required for patent ambiguities. And therefore, there are latent ambiguities, and there's no dispute that if this is just an issue about latent ambiguities, it must be resolved in favor of the contractor. As this court pointed out in White v. Edsel Construction Company, contractors are not expected to exercise clairvoyance in spotting hidden ambiguities in bid documents, and they are protected if they innocently construe in their own favor an ambiguity equally susceptible to another construction, because ambiguities in contracts drawn by the government are construed against the drafter. We also cite in our brief a case from the IBCA. It's the Foothill Engineering case, and it discusses the notion of patent ambiguities. And it points out that the test is the obviousness and apparent seriousness of the ambiguity itself in the context of a reasonable but busy prospective bidder attempting to prepare a responsive, timely, and competitive bid. In light of all the circumstances, at best, Your Honors, this is a latent ambiguity and therefore must be resolved in SRC's favor. Even if this court finds that the Navy's interpretation is reasonable or even if it finds that it's better than SRC's, that's not the test. The test is simply whether SRC's interpretation of these contract drawings is reasonable. No more than that. And here, we contend that it is. All right. I think we've got both sides well in mind. Thank you very much. Thank you, Your Honors. Take the appeal under advisement.